**In the Matter of Mitchell W. VOELKER, Debtor–Appellant.**

**No. 94–2271.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1994.

Decided Dec. 12, 1994.

Gary R. Allen, Bruce R. Ellisen, William S. Estabrook, Alice L. Ronk (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for appellee.

Terrence J. Byrne, George Goyke (argued), Wausau, WI, for debtor-appellant.

Before CUMMINGS, FLAUM, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

The debtor, Mitchell Voelker, appealed from a decision of the District Court holding that the Internal Revenue Service's ("IRS") tax lien extended to his personal property exempt from levy under 26 U.S.C. § 6331. We affirm.

I.

Mitchell Voelker filed a voluntary Chapter 13 bankruptcy petition on July 29, 1992. On November 19, 1992, the IRS filed a proof of a secured claim for delinquent taxes in the amount of $27,736, covering the years 1984 through 1989. Voelker objected to this

claim, contending that the IRS had a secured claim only in the amount of $2,471, the value of his unencumbered assets less $825.00 worth of personal property, including clothing, hand tools, a lawnmower, a weedeater, and a bow and arrows, which were exempt from levy under 26 U.S.C. § 6331. Voelker argued that because this property was exempt from levy, it was likewise exempt from the federal tax lien. The IRS objected, claiming that under 26 U.S.C. § 6321 it had a lien on all of Voelker's property. Voelker then amended his Chapter 13 plan to provide that he would surrender the property at issue to the IRS if a court determined that the lien extended to the property.

The bankruptcy court held that the IRS's lien did not attach to Voelker's exempt property. *In Re Voelker,* 164 B.R. 308 (Bkrtcy. W.D.Wis.1993). It noted that "[p]ersonal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors." *Id.* at 312 (citations omitted). It reasoned that § 6331's definition of levy as including "the power of distraint and seizure by any means" precluded the lien from attaching to the exempt property. *Id.*

The district court, however, reversed the bankruptcy court's decision. In an unpublished opinion, the district court found that the plain language of § 6321 led to the conclusion that the federal tax lien did attach to property exempt from levy.

## II.

■ We review questions of law *de novo. Matter of West,* 22 F.3d 775, 777 (7th Cir.1994). When interpreting a statute, "[i]f the statute is unambiguous, we must enforce the plain meaning of the language enacted by Congress." *Family & Children's Center, Inc. v. School City of Mishawaka,* 13 F.3d

1052, 1060 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994). This court "will look beyond the express language of a statute only where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *United States v. Real Estate Known as 916 Douglas Ave.,* 903 F.2d 490, 492 (7th Cir.1990), *cert. denied sub nom. Born v. United States,* 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991).

Section 6321 states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that many accrue in addition thereto) shall be a lien in favor of the United States upon *all property and rights to property,* whether real or personal, belonging to such person.

26 U.S.C. § 6321 (emphasis added). The Supreme Court has noted that this language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). The language of·the statute unambiguously shows that the federal tax lien attaches to all of a debtor's property, without exception. Thus, we agree with the district court, and the majority of other courts addressing the issue, that the lien attached to Voelker's $825.00 worth of personal property.[1] *See, e.g., United States v. Barbier,* 896

---

1. Voelker asserts that should we hold that the lien attaches, it must be released under 26 U.S.C. § 6325, which states that a lien must be released when "the liability for the amount assessed, together with all interest, has become unenforceable." We read this to mean that the underlying liability, not the lien securing it, must have become unenforceable in order to require releasing the lien. *See* Michael L. Saltzman, IRS Practice and Procedure ¶ 15.04[2] (2d ed. 1991) (the question is whether "the *tax assessed* is unenforceable

as a matter of law (*e.g.,* by the expiration of the period of limitations).") (emphasis added); William T. Plumb, Jr., Federal Tax Liens 43 (3d ed. 1972) ("unenforceability as a matter of *law* (*e.g.,* the statute of limitations), not of fact" requires release) (emphasis in original). In any event, we do not decide whether the lien is unenforceable because we express no view as to whether the IRS can enforce it through other procedures, such as judicial foreclosure under 26 U.S.C. § 7403.

F.2d 377 (9th Cir.1990); *Matter of King,* 137 B.R. 43, 46 (D.Neb.1991); *United States v. Stowe,* 121 B.R. 549, 552–53 (N.D.Ind.1990); *In Re Schreiber,* 163 B.R. 327, 334 (Bkrtcy. N.D.Ill.1994); *In Re Lyons,* 148 B.R. 88, 92 (Bkrtcy.D.D.C.1992); *In Re Krahn,* 124 B.R. 78, 82 (Bkrtcy.D.Minn.1990); *In Re Hall,* 118 B.R. 671, 672 (Bkrtcy.S.D.Ind.1990); *Matter of Beard,* 112 B.R. 951, 953–54 (Bkrtcy. N.D.Ind.1990); *In Re Bates,* 81 B.R. 63, 64 (Bkrcty.D.Ore.1987); *In Re Ridgley,* 81 B.R. 65, 69 (Bkrtcy.D.Ore.1987); *In Re Jackson,* 80 B.R. 213, 214–15 (Bkrtcy.D.Colo.1987).[2]

Contrary to Voelker's assertions, 26 U.S.C. § 6331 does not alter this result. That section provides:

(a) Authority of Secretary—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

(b) The term "levy" as used in this title includes the power of distraint and seizure by any means.[3]

Section 6331 says nothing about protecting this property from a lien, but merely from levy. Congress exempted this property from levy and has the capacity to do the same with the tax lien. It has chosen not to do so.

This dissimilarity in treatment makes sense, for as the Ninth Circuit discussed in *Barbier,* a lien and levy are different things. "A levy forces debtors to relinquish their property. It operates as a seizure by the IRS to collect delinquent income taxes." 896 F.2d at 379. On the other hand, "a lien ... is merely a security interest and does not involve the immediate seizure of property. A lien enables the taxpayer to maintain possession of protected property while allowing the government to preserve its claim should the status of [the] property later change." *Id.* Thus, if a debtor later sells the exempt property, the IRS could move to collect the proceeds from the sale.

Having the IRS lien attach to exempt property does not, as Voelker contends, undermine § 6334's goal of allowing the debtor to "retain some minimal personal effects necessary for living in our society," because the IRS cannot summarily seize the property. The debtor retains possession and the lien simply determines the amount he has to pay the IRS.[4] Thus, the effect of our holding that the IRS's lien attaches to Voelker's personal property will require him to pay the IRS $825.00 more than if the lien did not attach, either through larger monthly payments or through payments over a longer time period. As noted previously, however, Voelker has amended his plan to provide for the surrender of this property to the IRS, should we hold, as we do today, that the lien attaches. This action is not necessary, *see* 11 U.S.C. § 1325(a)(5), and does not alter our conclusion.

Extending the IRS's lien to property exempt from levy accomplishes both of Congress's goals: it increases the payment of delinquent taxes and allows the debtor to protect his property from summary, nonjudicial seizure. Because it is not absurd

---

**2.** Like the district court, we do not find the cases to the contrary, cited by the appellant, persuasive. *See Matter of Riley,* 88 B.R. 906, 912 (Bkrtcy.W.D.Wis.1987) (no analysis of issue); *Matter of Driscoll,* 57 B.R. 322, 327 n. 6 (Bkrtcy. W.D.Wis.1986) (Analysis consisting only of the sentence: "The debtor does receive a much smaller personal property exemption under IRC § 6334 (26 U.S.C. § 6334) which constitutes the sole exemption which may be claimed against a valid federal tax lien."); *In Re Ray,* 48 B.R. 534, 537–38 (Bkrtcy.S.D.Ohio 1985) (no analysis).

**3.** A lien does not itself act as a distraint and seizure so we do not, as Voelker contends we should, equate a lien with levy. We express no view as to whether this definition of levy prohibits other methods of collection, such as judicial foreclosure under 26 U.S.C. § 7403.

**4.** A chapter 13 debtor must satisfy the *full* amount of a secured claim, 11 U.S.C. 1325(a), which amount is determined by "the creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). The debtor pays for this secured claim in monthly installments over three years. However, the bankruptcy court can, for cause, extend the repayment period by an additional two years, 11 U.S.C. § 1322(c), so that the debtor does not necessarily have to make larger monthly payments.

that Congress would extend the lien to personal property yet preclude the levy of that property, we will not manufacture a different understanding of the "all property and rights in property" language in § 6321 and the exemption from levy in § 6331.

For the foregoing reasons, the decision of the district court is affirmed and the case remanded for further action.

AFFIRMED.

ROVNER, Circuit Judge, concurring.

The court's opinion today is a succinct and true application of the law and in that respect I join it without hesitation. This case has led me to question whether the law makes much sense, however. The problem is one for Congress to fix, of course, and my view of the practicalities may matter little. Some cases nonetheless cry out for comment, and I believe this is one of them.

Central to the framework of personal bankruptcy is the notion of a "fresh start": the opportunity for a debtor to pool his resources, pay what he can of his debts, and move on. *See, e.g., In re Smith,* 848 F.2d 813, 816–17 (7th Cir.1988); *In re LeMaire,* 898 F.2d 1346, 1357–58 n. 16 (8th Cir.1990) (en banc) (dissenting op.). But a fresh start ought not be a naked start. A debtor should not be made to surrender the clothes on his back or the food in his cupboard in exchange for the protection of bankruptcy. Common sense as well as compassion dictates as much: a bankrupt deprived of life's necessities will merely have to reallocate a portion of his future income to reacquire those items (in all likelihood at a greater cost), defeating the purpose of the fresh start bankruptcy purports to provide. It makes far more sense to leave these items in the debtor's hands. Consistent with that notion, section 6334(a) exempts a category of personal property from the power of administrative levy that the IRS otherwise enjoys.

But, as the IRS is quick to point out, the statute says nothing about a lien. And because the statutory exemption indeed refers only to levies, and the levy and the lien are distinct legal concepts, the court correctly concludes that the exemption does not deprive the IRS of the lien that it enjoys on all property owned by the debtor.

Permitting the IRS to retain a lien on personal property may make some sense given the possibility that a debtor could decide to sell it. If Mr. Voelker decides to give up his weed eater or his bow and arrows, it only seems fair that the IRS lay claim to the cash he gains from the sale. And yet it would seem unrealistic to expect that the government will realize substantial remuneration from the sale of these second-hand items. Notably, for example, the statute currently imposes a cap of $1,650 on the value of "fuel, provisions, furniture, and personal effects" which may be exempted from levy. § 6334(a)(2). Moreover, many of these and other items falling within the exemption can hardly be considered luxuries that a person can do without—*e.g.,* food, clothing, fuel, and school books. § 6334(a)(1), (2). Thus, the likelihood that the debtor will (short of desperation) convert these modest belongings to cash appears low, and the prospect that the proceeds will be significant if he does even lower. Perhaps there is a forgotten Armani original hanging in Mr. Voelker's closet, but I doubt it.

Of far more concrete benefit to the IRS in recognizing a lien on such property is the fact that the value of the property must be included in the total amount the debtor is obligated to repay the government. *Ante* at 1052 & n. 4. Thus, in the event that the debtor "chooses" to keep the property (and what real "choice" is there with respect to items like food, clothing, and fuel?), he must either make higher monthly payments over the life of his payment plan or make these payments over a longer period of time, beyond the usual three-year maximum if need be. See 11 U.S.C. § 1322; *ante* n. 4. Neither of these scenarios is consistent with the purpose of bankruptcy. A higher monthly payment raises the probability that the debtor will default on his obligations, particularly when he has a limited income. The latter option postpones the fresh start that the debtor has sought to achieve in filing for bankruptcy protection.

What will happen if Mr. Voelker elects to keep his personal property but cannot make

good on the increased financial obligation that decision would impose on him? The government reassured us at oral argument that it does not want Mr. Voelker's clothing. I take that to mean that although the IRS enjoys a lien on the $825 worth of personal property Mr. Voelker possesses, it would never go so far as to seek to enforce that lien in foreclosure proceedings. Thus, Mr. Voelker need not worry about having the clothes taken from his back, literally. Yet, he ought not have to rely on a wink and a nod in assessing his prospects, either. We assume that debtors, like any other citizens, will take their financial obligations seriously. So if Mr. Voelker wishes to keep his personal effects, he will no doubt do his best to scrape among meager resources to pay for them. Again, this seems to me to be contrary to the purpose of bankruptcy protection. If the government either will not or cannot enforce the lien on Mr. Voelker's personal property, then arguably it should never be recognized in the first instance.

Mr. Voelker's amended Chapter 13 plan provides that in the event the lien on his personal property is upheld, he will surrender these goods to the government in lieu of increased payment obligations. No one disputes that this is his right, and by putting the government in the business of conducting a rummage sale Mr. Voelker may be doing the one thing that best exposes the folly in permitting the IRS a lien on this category of property. Surely the cost of liquidating these items (if the government even tries) far outmeasures any income that the IRS can hope to attain from their sale. To say nothing of the cost to Mr. Voelker's dignity and, in the final analysis, our own.