# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50420

IN RE: LUCIO BARRAGAN-FLORES,

> Debtor.

EVOLVE FEDERAL CREDIT UNION,

> Appellee,

v.

LUCIO BARRAGAN-FLORES,

> Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2021

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CV-364

Before OWEN, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:

Lucio Barragan-Flores filed for Chapter 13 bankruptcy. At the time, he had outstanding balances on car loans with Evolve Federal Credit Union that he had obtained to purchase a GMC Sierra and a Toyota Camry. The loans were cross-collateralized, meaning that the Sierra and Camry were both pledged as collateral for each loan. Barragan-Flores's bankruptcy plan (the Plan), citing 11 U.S.C. § 1325(a)(5), proposed retention of the Sierra, "cram down" of the loan for the purchase of the Sierra, and surrender of the Camry

No. 18-50420

as the collateral for the purchase the Camry.  The bankruptcy court approved the Plan, but the district court reversed, holding that Barragan-Flores could not elect to surrender one of the vehicles as the collateral securing the Camry Loan (the Camry) and retain the other vehicle (the Sierra).  We affirm.

## I

The facts of this case are undisputed.  In June 2017, Lucio Barragan-Flores filed a Chapter 13 bankruptcy petition.  Prior to filing his Chapter 13 petition, Barragan-Flores entered into two loan agreements with Evolve Federal Credit Union (Evolve).  Barragan-Flores used the proceeds of the first loan to purchase a 2011 GMC Sierra (Sierra Loan), and the proceeds of the second loan to purchase a 2016 Toyota Camry (Camry Loan).  Barragan-Flores possessed both vehicles at the time of his Chapter 13 filing.  Both loan agreements contain a cross-collateralization provision that states: "Collateral securing other loans with the Credit Union may also secure this loan."  The parties stipulated that each loan agreement is "cross-collateralized by both vehicles."  Evolve filed two separate Proofs of Claim, one for the Camry Loan (Camry Claim) and another for the Sierra Loan (Sierra Claim).

Barragan-Flores could no longer afford to keep both vehicles, so his Chapter 13 Plan proposed that he retain the Sierra, "cram down" the Sierra Loan, and surrender the Camry to Evolve as collateral for the Camry Loan.  Evolve filed an objection to the Plan, specifically the "partial surrender" of collateral under the Camry Claim, arguing that the cross-collateralization provisions in the loans prevented Barragan-Flores from surrendering the Camry and retaining the Sierra.

The bankruptcy court entered an order confirming the Plan.  Evolve filed a motion for a new trial, which the bankruptcy court denied.  Evolve appealed the orders confirming the Plan and denying the motion for a new trial to the district court.  The district court reversed the bankruptcy court's order

No. 18-50420

confirming the Plan and remanded the case for further proceedings in accordance with its order.[1] Barragan-Flores appeals.

## II

When reviewing the ruling of a bankruptcy court, this court applies the same standards of review as the district court.[2] We review findings of fact for clear error and legal conclusions de novo.[3]

Section 1325(a) of the Bankruptcy Code contains a number of requirements regarding a bankruptcy court's confirmation of a Chapter 13 plan.[4] Subsection (a)(5) governs a plan's treatment of an allowed secured claim:[5]

> (a)    Except as provided in subsection (b), the court shall confirm a plan if—
>
> . . . .
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
>> (A) the holder of such claim has accepted the plan;
>>
>> (B)(i) the plan provides that—
>>
>>> (I) the holder of such claim retain the lien securing such claim until the earlier of—
>>>
>>>> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>>
>>>> (bb) discharge under section 1328; and

---

[1] *Evolve Fed. Credit Union v. Barragan-Flores* (*In re Barragan-Flores*), 585 B.R. 397, 403 (W.D. Tex. 2018).

[2] *ASARCO L.L.C. v. Barclays Capital, Inc.* (*In re ASARCO, L.L.C.*), 702 F.3d 250, 257 (5th Cir. 2012) (citing *In re Scopac*, 624 F.3d 274, 279-80 (5th Cir. 2010)).

[3] *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (per curiam) (citing *In re Coho Energy, Inc.*, 395 F.3d 198, 204 (5th Cir. 2004); *In re Barron*, 325 F.3d 690, 692 (5th Cir. 2003)).

[4] 11 U.S.C. § 1325(a).

[5] *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 956-57 (1997).

No. 18-50420

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder . . .[6]

The Supreme Court has explained that, under § 1325(a), "a plan's proposed treatment of secured claims can be confirmed if one of three conditions is satisfied: The secured creditor accepts the plan; the debtor surrenders the property securing the claim to the creditor; or the debtor invokes the so-called 'cram down' power."[7] The "cram down" option allows the debtor to keep the collateral over the objection of the creditor and provide the creditor with payments that, over the life of the plan, will total the present value of the collateral.[8]

---

[6] 11 U.S.C. § 1325(a)(5).

[7] *Rash*, 520 U.S. at 957 (citations omitted) (citing 11 U.S.C. § 1325(a)(5)).

[8] *Id.* (citing 11 U.S.C. § 1325(a)(5)(B)).

4

## No. 18-50420

Barragan-Flores argues that the plain language of § 1325(a)(5), which requires a debtor to select an option "with respect to each allowed secured claim,"[9] allows debtors to select different options for each individual claim against their estate. Under Barragan-Flores's reading of § 1325(a)(5), he may select a different option for each car loan claim regardless of the cross-collateralization provisions. Evolve focuses on the fact that § 1325(a)(5) presents its options using the conjunction "or," arguing that, accordingly, "the options . . . for treatment of secured claims are mutually exclusive." Under Evolve's reading of § 1325(a)(5), Barragan-Flores must select one of the three options for each claim—he may not select different options for different collateral securing the same claim. The district court agreed with Evolve and held that Barragan-Flores "must either cramdown or surrender all of the collateral securing the Camry Loan, *i.e.*, the Sierra and the Camry."[10]

We agree with the district court. The text of § 1325(a)(5) does allow debtors to select a different option "with respect to each allowed secured claim."[11] However, allowing a debtor to select a different § 1325(a)(5) option for each claim is different from allowing a debtor to select different options for different collateral securing the same claim. While § 1325(a)(5) allows the former, it does not allow the latter: its use of the conjunction "or" between the options provided in subsection (A), (B), and (C) makes it clear that debtors may choose only *one* of those three options for each claim. A plan violates that requirement when it selects different options for different collateral securing the same claim.

---

[9] 11 U.S.C. § 1325(a)(5).

[10] *Evolve Fed. Credit Union v. Barragan-Flores (In re Barragan-Flores)*, 585 B.R. 397, 401 (W.D. Tex. 2018).

[11] 11 U.S.C. § 1325(a)(5).

No. 18-50420

Barragan-Flores takes issue with this rule because it prevents debtors from selecting different options for different claims.  However, debtors are not always free to select different options for different claims.  For example, when a single item of collateral secures two different claims, a debtor is not able to choose distinct options for each claim—he may surrender the item of collateral or retain it, but not do both.  Our decision today merely restricts a debtor's ability to select different § 1325(a)(5) options for different pieces of collateral securing the same loan.

### III

*Williams v. Tower Loan of Mississippi* (*In re Williams*) supports our decision.[12]   *Williams* analyzed how a debtor may employ § 1325(a)(5)'s options.[13]  In *Williams*, the debtor's plan sought to address one secured claim by surrendering some of the collateral securing the claim and paying the cram down value of the remaining collateral.[14]  We held that the debtor's plan could not be approved because "[t]he plain language of [§ 1325(a)(5)] does not give the debtor the right to adopt a combination of the options offered in (B) and (C)."[15]

In *Williams*, we largely adopted the reasoning of *First Brandon National Bank v. Kerwin* (*In re Kerwin*), a Second Circuit case involving a Chapter 12 proceeding, noting that Chapter 12 "is modeled after and is identical to its Chapter 13 counterpart."[16]  In *Kerwin*, the Second Circuit held that a debtor had to choose the option provided in either subsection (B) or (C) and could not

---

[12] 168 F.3d 845 (5th Cir. 1999).

[13] *Id.* at 846-47.

[14] *Id.* at 846.

[15] *Id.* at 847.

[16] *Id.* (citing *First Brandon Nat'l Bank v. Kerwin* (*In re Kerwin*), 996 F.2d 552 (2d. Cir. 1993)).

mix-and-match.[17] The Second Circuit also held that the language in subsection (C) allowing for the surrender of "the property securing such claim" refers to all of the debtor's collateral and not just part of it.[18]

In *Williams*, we also cited the Supreme Court's statements in *Associates Commercial Corporation v. Rash* that (1) "[a] plan's proposed treatment of secured claims can be confirmed if *one of three* conditions is satisfied" and (2) "[i]f a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has *two options* for handling allowed secured claims: surrender the collateral to the creditor . . . *or,* under the cram down option, keep the collateral over the creditor's objection."[19]   As we said in *Williams*, those statements "strongly indicate[] that a debtor cannot combine subsections (B) and (C) to create a fourth option."[20]

Barragan-Flores attempts to distinguish *Williams* by emphasizing that the dispute in *Williams* involved a single promissory note.  Barragan-Flores argues that, because the decision in *Williams* only involved one claim, *Williams* did not address the fact that § 1325(a)(5) requires a debtor to make a decision with respect to "each" secured claim.[21]   The bankruptcy court agreed with Barragan-Flores's reading of *Williams* and held that the case was factually distinguishable because it dealt with a single loan.

The district court reasoned that Evolve holds two allowed secured claims, which it said "should be analyzed separately despite the cross-collateralization clauses."[22]   However, the district court took issue with the

---

[17] *Kerwin,* 996 F.2d at 556-57.

[18] *Id.* at 557.

[19] *Williams*, 168 F.3d at 847 (omission in original*)* (quoting *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 957 (1997)).

[20] *Id.*

[21] 11 U.S.C. § 1325(a)(5).

[22] *Evolve Fed. Credit Union v. Barragan-Flores* (*In re Barragan-Flores*), 585 B.R. 397, 401 (W.D. Tex. 2018).

bankruptcy court's focus on the number of claims at issue. In the district court's view, "*Williams* does not lend itself to any apparent distinction in cases where more than one claim is secured by the same collateral."[23] Instead, according to the district court, *Williams* "turned on the treatment of the collateral securing the claim at issue."[24] Examining "the treatment of the collateral securing the claim at issue" in this case—the Camry Claim—the district court held that the Plan did exactly what *Williams* prohibited: selected different § 1325(a)(5) options for different items of collateral.[25]

The district court was correct. *Williams* held that debtors must select the same § 1325(a)(5) option for all of the collateral securing a single claim.[26] Applying that rule to the Camry Claim, for the Plan to be approvable under § 1325(a)(5), the Plan must select the same § 1325(a)(5) option for both items of collateral securing the Camry Loan—the Camry and the Sierra. The cross-collateralization provision does not free Barragan-Flores from this requirement. As the district court reasoned, "[w]ere the holding in . . . *Williams* inapplicable to debtors with multiple claims secured by the same collateral, then such debtors would be afforded greater flexibility in providing for secured creditors' claims even though those debtors and their collateral are more encumbered. That result is counterintuitive."[27] It is also contrary to the plain language of § 1325(a)(5).

\*     \*     \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[23] *Id.* at 402.

[24] *Id.*

[25] *Id.* at 402-03.

[26] *Williams v. Tower Loan of Mississippi* (*In re Williams*), 168 F.3d 845, 847 (5th Cir. 1999) ("The plain language of the statute does not give the debtor the right to adopt a combination of the options offered in (B) and (C).").

[27] *Barragan-Flores*, 585 B.R. at 402-03.